ESTATE OF S. WENTWORTH HORTON, GERTRUDE I. WARNER, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1479–65. Filed March 27, 1967.

---

*Richard H. Wels*, for the petitioner.
*Marie L. Garibaldi*, for the respondent.

FORRESTER, *Judge:* The respondent determined a deficiency in estate tax in the amount of $29,844.54 in respect of the Estate of S. Wentworth Horton. The sole question for our determination is whether the surviving spouse's interest in real property that passed under Horton's will qualifies for the marital deduction under section 2056.[1]

### FINDINGS OF FACT

All of the facts have been stipulated.

S. Wentworth Horton, hereinafter referred to as the decedent, died on October 2, 1960, 12 days before his 75th birthday, a resident of the State of New York.

On October 9, 1960, Gertrude I. Warner was appointed executrix of decedent's estate.

She filed an estate tax return on January 2, 1962, with the district director of internal revenue, Brooklyn, N.Y.

The decedent was survived by his wife, Martha M. Horton, and his two sons, David Barnabas Horton and Stewart Woodford Horton.

The decedent's will, dated February 16, 1950, was duly admitted to probate on October 9, 1960. It had been drawn by the decedent's brother-in-law, who was an insurance agent.

The third and fourth paragraphs of decedent's will are as follows:

THIRD: All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and wheresoever situate, to which I may be entitled, or of which I may have power to dispose at my demise, I give, devise and bequeath absolutely to my beloved wife, MARTHA M. HORTON.

FOURTH: Should my said wife predecease me, or should she die before said residuary estate shall have been distributed to her, then and in such event I give, devise and bequeath said residuary estate, in equal shares, to our two sons, DAVID BARNABAS HORTON and STEWART WOODFORD YOUNG HORTON, absolutely.

The petitioner claimed a marital deduction of $150,890.50, an amount equal to 50 percent of the value of the adjusted gross estate.

The deduction consisted of $57,030.39 attributable to assets that passed outside the will and $93,860.11 attributable to the wife's interest in real estate that passed under the residuary clause quoted above.

The respondent determined that a marital deduction was allowable in the amount of $57,030.39.

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise noted.

OPINION

The respondent's position is that the wife's interest in real property that passed under the will was a nondeductible, terminable interest. The petitioner argues that under New York law the real property vested indefeasibly in the wife at the decedent's death and therefore the wife's interest in such property qualifies for the marital deduction. Section 2056(b) provides:

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; * * *

The nature of the interest that passed to the wife under the decedent's will is a question of State law. *Kapser v. Kellar*, 217 F. 2d 744 (C.A. 8, 1954). Under New York law title to real property vests in the devisee immediately upon the death of the testator. *Barber v. Terry*, 224 N.Y. 334, 120 N.E. 732 (1918); 12 Carmody-Wait, Cyclopedia of New York Practice, sec. 1575. The question is therefore whether a New York court would hold that the wife's interest in real property vested indefeasibly at the decedent's death or that it vested subject to divestment. If it vested indefeasibly the interest would qualify for the marital deduction. If it did not it would be a non-deductible, terminable interest.[2]

The petitioner relies on *In re Herrmann's Estate*, 82 N.Y.S. 2d 888 (Surr. Ct. 1948). In that case the decedent's will created a trust for the benefit of his brother and directed that upon the brother's death the

[2] Two Circuit Court of Appeal cases, applying the law of Oklahoma and Missouri, have upheld denials of a marital deduction where the interest of the surviving spouse was conditioned upon surviving the administration of the testator's estate. *United States v. Mappes*, 318 F. 2d 508 (C.A. 10, 1963); *Bookwalter v. Lamar*, 323 F. 2d 664 (C.A. 8, 1963), certiorari denied 376 U.S. 969 (1964).

Marital deductions have been allowed in two cases involving interests conditioned on survival to the date of distribution. *Kellar v. Kasper*, 138 F. Supp. 738 (D.S.D. 1956) (S.D. law); *Smith v. United States*, 158 F. Supp. 344 (D. Colo. 1957) (Colo. law). Deductions have been denied on similar facts in three cases involving California law. *California Trust Co. v. Riddell*, 136 F. Supp. 7 (S.D. Cal. 1955); *Estate of Allen Clyde Street*, 25 T.C. 673 (1955); *Estate of Frank Sbicca*, 35 T.C. 96 (1960).

In two cases Federal courts have accepted State court determinations that the interest of the surviving spouse vested indefeasibly at death. *Steele v. United States*, 146 F. Supp. 316 (D. Mont. 1956); *Estate of Fred L. Dake v. United States*, (W.D.N.Y. 1961) 61–2 U.S.T.C. par. 12033, 8 A.F.T.R. 2d 6059.

principal be distributed equally between two nieces of the decedent. The will also contained a residuary bequest to the two nieces. It provided for alternative gifts in the event that either of the nieces "shall die before she shall become entitled to the possession of or title to any funds or property hereunder." One of the nieces, Leona, died 5 months after the testator. In a proceeding for construction of the will, the special guardian of the alternative takers, the infant children of Leona, argued that since Leona died before the distribution of the testator's property her interest in the estate was divested. The executors of the testator's estate and of the estate of Leona conceded that Leona, having predeceased the testator's brother, had no further interest in the remainder of the trust. They maintained, however, that the gift of one-half the residue vested indefeasibly in Leona when she survived the testator. The court held that Leona's interest in personal property passing under the residuary clause was divested by her death prior to distribution but that her interest in real property vested indefeasibly at the testator's death. The court said (82 N.Y.S. 2d at 890–891):

Upon the death of a testator title to his real property vests in the devisees named in his will. Waxson Realty Corp. v. Rothschild, 255 N.Y. 332, 174 N.E. 700; Barber v. Terry, 224 N.Y. 334, 339, 120 N.E. 732, 733; Corley v. McElmeel, 149, N.Y. 228, 235, 43 N.E. 628, 630; Schick v. Wolf, 207 App. Div. 652, 202 N.Y.S. 601. In respect of his personal estate a different rule applies. An executor takes the unqualified legal title of all personal property of a testator not specifically bequeathed. The fiduciary holds it not in his own right but as trustee for creditors, legatees and other persons interested in the estate. Matter of Starbuck's Ex'x, 251 N.Y. 439, 443, 167 N.E. 580, 581, 65 A.L.R. 216; Blood v. Kane, 130 N.Y. 514, 29 N.E. 994, 15 L.R.A. 490; Milliner v. Morris, 219 App. Div. 425, 427, 219 N.Y.S. 166, 168; Sauvage v. Sauvage, 235 App. Div. 460, 461, 257 N.Y.S. 325, 326, 327. The legatees take no legal title to the subject of their legacies until the executor assents to the delivery of the property. Blood v. Kane, supra.

In the use of the terms "possession of" and "title to" with reference to any funds or property under his will, the testator evidently had in mind the distinction between property which descends immediately and property which is transferred only after the estate is administered. In respect of his personal property the legal title would be in his executors and the legatees would not be entitled to possession until the administration of the estate had proceeded to such a point that the executors could make distribution. The title to the real estate would devolve upon the devisees immediately without any act on the part of the executors. In one case there would be distribution only when the executors had acted to distribute the property and in the other case there would be distribution immediately.

The petitioner argues that in the instant case the decedent, by conditioning the wife's bequest upon her survival to the date of "distribution," had in mind the same distinction between the devolution of real and personal property and therefore the effect of the fourth paragraph of the will, as to decedent's real property, was merely to require that the wife be living at his death.

We do not think that a New York court would place such a construction upon the will. The language of the will in the *Herrmann* case, "entitled to the possession of or title to any funds or property hereunder," was more explicit in distinguishing between real and personal property. The court there was able to read the will as conditioning the gift upon survival to the time of becoming "entitled to * * * the title to * * * property," which does seem to evidence a reasonably clear intent to make a gift of real property conditional merely upon surviving the death of the testator since title to such property vests automatically in the devisee at that time. In the instant case the construction argued for would render unnecessary that part of the fourth paragraph that expressly requires the wife to survive the testator's death. The relevant language is:

> FOURTH: Should my said wife predecease me, *or* should she die before said residuary estate shall have been distributed to her * * * [Emphasis added.]

Also, the petitioner, in arguing for a liberal construction of the will with respect to tax consequences, points out that the will was drafted by a nonlawyer. In our view that fact undercuts the contention that the testator intended, by using the word "distribution," to embody the rather subtle double meaning given to that term by the *Herrmann* case.

The decedent might have intended in some general way to insure that the wife's interest would not vest indefeasibly until she was able personally to possess and enjoy the assets passing under the residuary clause. If that had been his intention it would not follow that, as to realty, he intended his wife's interest to vest indefeasibly at death. His death may have caused title to pass to her, but his will provided, "My Executrix, or Executor, shall have full power to sell, lease, mortgage or otherwise dispose of, all or any part of my estate, as she, or he, may deem advisable, in the administration thereof." [3] Thus, the death of the testator did not of itself enable the wife to possess or enjoy real property passing under the residuary clause.

The term "distribution," in addition to the meaning relied upon by the petitioner, could refer to the actual distribution of estate assets or to the entry of a decree of partial or final distribution. See 12

---

[3] The will also provided:

"SEVENTH: If my Executrix, or Executor, decides to sell any or all of my estate, real or personal, she, or he may do so, at public or private sale, for such price or prices as she, or he, may deem expedient, giving good and sufficient title thereto, without responsibility on the part of the purchaser or purchasers thereof for the mis-application or the non-application of the purchase price paid for such property. Neither of said appointees shall be required to file a bond for faithful performance of her, or his duties."

If the will had been silent on the powers of the executrix she would have had the power under New York law to take possession of, collect the rents from, manage, sell, lease, or mortgage the real property passing under the residuary clause. See former sec. 13, N.Y. Deced. Est. Law, Laws 1929, ch. 229, sec. 1; amended, Laws 1947, ch. 722, effective Sept. 1, 1947; repealed, Laws 1964, ch. 681, sec. 1, effective June 1, 1965. The present provision is sec. 127(2)(f), N.Y. Deced. Est. Law. Cf. sec. 11–1.1, N.Y. Estates, Powers and Trusts Law, Laws 1966, ch. 952, effective Sept. 1, 1967.

Carmody-Wait, Cyclopedia of New York Practice, sec. 2152. We think these are the more common meanings of the word and therefore more likely to have been intended by the decedent. We think it unlikely that the decedent had in mind the time at which his wife would have been entitled to bring an action to require the executrix to pay over the wife's distributive share. See N.Y. Surr. Ct. Act sec. 217; N.Y. Decedent Estate Law sec. 146. Cf. sec. 2102(5), Surr. Ct. Proc. Act, Laws 1966, ch. 953 (effective Sept. 1, 1967). If our assumptions are correct, it follows that respondent's determination must be upheld since neither sort of "distribution" would necessarily occur within 6 months after the death of the decedent.[4]

We have considered the New York cases containing statements to the effect that an estate given in one part of a will, in clear and decisive terms, cannot be taken away or cut down by raising a doubt upon the extent or meaning or application of a subsequent clause, nor by inference therefrom nor by any subsequent words that are not as clear and decisive as the words giving that estate. See, e.g., *Roseboom* v. *Roseboom*, 81 N.Y. 356 (1880), and, generally, 2 Davids, New York Law of Wills, sec. 809. Such statements must be considered in light of the factual context out of which they arose.[5] They have frequently been made in the course of deciding that conditions annexed to a gift were merely precatory and not expressive of a command binding upon the recipient. See, e.g., *Sands* v. *Waldo*, 100 Misc. 288, 165 N.Y.S. 654 (S. Ct. 1917); *In re Barney's Will*, 207 App. Div. 25, 201 N.Y.S. 647 (1923), affd. 239 N.Y. 584, 147 N.E. 205 (1924). The factual context most relevant to the instant case appears to be that involved in *In re Sutton's Will*, 150 Misc. 137, 268 N.Y.S. 458 (Surr. Ct. 1934). There a will provided for legacies in language that created an absolute gift to each legatee. The will further provided that "in the event that any legatee shall have died before he or she shall have received the legacy bequeathed to him or her, I hereby direct that the same shall lapse and revert to and form a part of my residuary estate."

---

[4] Sec. 2056(b)(3) provides:

(3) INTEREST OF SPOUSE CONDITIONAL ON SURVIVAL FOR LIMITED PERIOD.—For purposes of this subsection, an interest passing to the surviving spouse shall not be considered as an interest which will terminate or fail on the death of such spouse if—

(A) such a death will cause a termination or failure of such interest only if it occurs within a period not exceeding 6 months after the decedent's death, or only if it occurs as a result of a common disaster resulting in the death of the decedent and the surviving spouse, or only if it occurs in the case of either such event; and

(B) such termination or failure does not in fact occur.

Sec. 20.2056(b)–3(d), Estate Tax Regs., states:

*Example* (4).—A decedent devised and bequeathed his residuary estate to his wife if she was living on the date of distribution of his estate. The devise and bequest is a nondeductible interest even though distribution took place within 6 months after the decedent's death and the surviving spouse in fact survived the date of distribution.

[5] The case cited for the canon quoted in the text contains and has been cited for a counter-canon, i.e., that an instrument is to be construed, if possible, so as to avoid repugnancies and contradictions, and to give effect to all of its words and provisions. See 1 Davids, New York Law of Wills, sec. 465, fn. 22.

A distributee in the event of intestacy, who took nothing under the will, argued that the latter provision also qualified the residuary clause and that therefore the legacies and residuary gifts were void under the New York rule against perpetuities.

The court held that the quoted provision did not apply to those who took under the residuary clause. That was sufficient to dispose of the distributee's contention regardless of the meaning given to the word "received" in the provision conditioning the legacies, as the court pointed out. Nevertheless the court also ventured upon a construction of the word "received." It stated (150 Misc. at 140–142, 268 N.Y.S. at 462–464):

> The gifts of the general legacies of money are * * * made in language that creates an absolute gift to each legatee. * * * The rule is established that the courts refuse to cut down an estate already granted unless such terms of limitation in themselves show a clear intention to do so by use of words definite in their meaning. * * *
>
> The highly important word in paragraph 16 is the word "received." What did the testatrix intend by the use of that word? Did she mean to divest the objects of her bounty if they should die before a certain time? And, if so, what time did she choose? The word "received," coupled with other words of intent, may be construed to relate to several periods when the general legatees may "receive" the gifts: (1) When the legacies were vested at the time of death or the probate of the will * * * (2) when the legacies are enforceable, which may be seven months after the grant of letters * * * (3) when part payment of the legacy may be made; (4) when the legacies are actually "received," which may be some distant time at the whim or caprice of the executors. * * *
>
> Which time did she intend to have the legacies "received?" Evidence is necessary to establish in what sense the decedent used the ambiguous word in question, but extraneous evidence was not forthcoming to assist in deciding the question as an issue of fact. There is nothing in the language of the will to indicate what the will-maker intended by the use of the word "received." * * *
>
> *       *       *       *       *       *       *
>
> The word "received" as used in paragraph 16 is indefinite, inconsistent, and repugnant to the words of absolute gift and I hold the paragraph is void for ambiguity. It should be wholly disregarded as meaningless and nugatory. * * *

The *Sutton* case appears to be sui generis in New York law. In approach it appears to be contrary to the leading New York case dealing with the construction of alternative gifts in the event a legatee dies before payment or receipt of his legacy. *March* v. *March*, 186 N.Y. 99, 78 N.E. 704 (1906). See generally Annotation, 142 A.L.R. 136 (1943). In the light of the line of authority stemming from the New York case last cited we do not feel that a New York court would read the condition of survival to the date of distribution out of the will in issue. See especially, *In re Merrill's Estate*, 208 App. Div. 649, 204 N.Y.S. 47 (1924), affd. 239 N.Y. 517, 147 N.E. 176 (1924); *In re Werner's Estate*, 142 Misc. 702, 256 N.Y.S. 372 (Surr. Ct. 1932); *In re Denton's Will*, 46 N.Y.S. 2d 145 (Surr. Ct. 1943); *In re Graves' Will*,

86 N.Y.S. 2d 382 (Surr. Ct. 1949) ; *In re Powers' Estate*, 98 N.Y.S. 2d 457 (Surr. Ct. 1950).

Congress has carved out a specific exception to the terminable interest rule permitting persons to take advantage of the marital deduction while at the same time providing for an alternative gift in the event of the death of the surviving spouse soon after the death of the other. As the Supreme Court has stated, "The achievement of the purposes of the marital deduction is dependent to a great degree upon the careful drafting of wills * * *." *Jackson* v. *United States*, 376 U.S. 503, 511 (1964).

*Decision will be entered for the respondent.*